Cowen et al., Trustees, Appellants, *v.* Wassman et al., Appellees and Appellants.

(Decided December 16, 1939.)

*Mr. Kenneth G. Cooper,* for appellants.
*Mr. Edmund L. Matz* and *Mr. C. C. Sedgwick,* for appellees.

Carter, J.   The action below was one to foreclose a mortgage on real estate and to marshal liens.

Issues having been joined, the cause came on for trial to the court.   The court made its findings as to the various amounts due plaintiffs and cross-petitioners and fixed the priorities as follows:

First:  Taxes and assessments.

Second:  Subject to the payment of taxes and assessments, the defendants, L. L. DuBois, G. W. Minch and George H. McDonald, trustees for the creditors of the

Farmers & Merchants National Bank, have the first and best lien upon the Guernsey street property, the Bellaire Wall Plaster property and the Belmont street property by virtue of their judgment and execution liens.

Third: Plaintiffs, as trustees for the depositors and creditors of the First National Bank of Bellaire, have a third best lien upon the Belmont street property and the Bellaire Wall Plaster property.

Fourth: The defendant, Union Savings Bank, has the fourth best lien upon the Belmont street property and the Bellaire Wall Plaster property.

Fifth: That the liens of the plaintiffs and the defendant, the Union Savings Bank, have equal priority but are each subject to the lien of the trustees for the creditors of Farmers & Merchants National Bank and the liens for taxes found due.

Sixth: That the Gypsum company has the sixth lien upon the Belmont street property and the Bellaire Wall Plaster property, subject to the above liens.

Seventh: That neither defendant, Charles Wassman, nor defendant, Mary Jane Wassman, are entitled to a homestead exemption under favor of Section 11735, General Code, and that defendant, Charles Wassman, is not entitled to an allowance in lieu of a homestead under favor of Section 11737, General Code, but that defendant, Mary Jane Wassman, is entitled to $500 in lieu of a homestead under favor of Section 11737, General Code, in the Guernsey street property, to be paid from the proceeds of said property next after the payment of taxes due thereon.

The court ordered that unless within three days from the entry of this decree the defendant, Charles Wassman, pay or cause to be paid the several amounts found due and costs, that an order issue to the sheriff commanding him to appraise, advertise and sell the three parcels of real estate and the property is in process of sale at the present time.

After making disposition of various motions for new trials, judgment was rendered on the various findings and appeal is prosecuted to this court by defendants, Charles Wassman, Mary Jane Wassman, Dorothy Feller, The Farmers & Merchants National Bank of Bellaire, L. L. DuBois, G. W. Minch and George H. McDonald as trustees for the creditors of the Farmers & Merchants National Bank of Bellaire, plaintiffs, H. D. Cowen, S. G. Crow, C. M. Rosser, trustees for the creditors and depositors of the First National Bank. Defendants, The Farmers & Merchants National Bank, and L. L. DuBois, G. W. Minch and George H. McDonald, as trustees, appeal from that portion of the finding of the court wherein the court awarded to Mary Jane Wassman an allowance of $500 in lieu of a homestead. Plaintiffs, appellants herein, H. D. Cowen, S. G. Crow, C. M. Rosser, trustees, appeal from that portion of the court's findings wherein the court gave priority to the lien of the judgment of defendants, Farmers & Merchants National Bank, L. L. DuBois, G. W. Minch and George H. McDonald, trustees for crditors of Farmers & Merchants National Bank, over the lien of the judgment of plaintiffs and over the mortgage of plaintiffs.

Defendants, appellants herein, Charles Wassman and Mary Jane Wassman, appeal from that portion of the court finding wherein the court refused to set off to him or his wife the homestead property as a homestead according to the provisions of Section 11735, General Code, the court having granted an allowance of $500 in lieu of homestead to Mary Jane Wassman.

Was the court in error in the respects urged by these appellants? Now as to the claim of the Farmers & Merchants National Bank, L. L. DuBois et al., trustees, that the court erred in awarding $500 in lieu of homestead to Mary Jane Wassman.

We have in this state a number of statutes dealing

with exemptions, and among them are exemptions to debtors of a homestead when certain conditions exist, or money in lieu thereof. Sections 11734, 11735, 11737, 11738, General Code, provide for such exemptions.

Section 11737, General Code, provides: "When a homestead is charged with liens, some of which, as against the head of the family or the wife, preclude the allowance of a homestead to either of them, but others of such liens do not, and a sale of such homestead is had, then, after the payment, out of the proceeds of sale, of the liens so precluding such allowance, the balance, not exceeding five hundred dollars, shall be awarded to the head of the family, or the wife, as the case may be, in lieu of such homestead, upon his or her application, in person, by agent, or attorney."

An application for a homestead was made by Wassman and his wife.

It was under this section that the allowance of $500 was made to Mary Jane Wassman in lieu of a homestead. Was this statute applicable or should a homestead have been set off as demanded by Wassman and his wife, Mary Jane Wassman? To determine this issue, it becomes necessary to review briefly the facts.

Plaintiffs held a mortgage on two parcels of the real estate in question, the Belmont street property, being an undivided one-sixth interest in a building located on Belmont street, Bellaire, and the Bellaire Wall Plaster property located on West Hamilton street, Bellaire. This mortgage was executed to plaintiffs by Charles Wassman and Mary Jane Wassman, husband and wife, to secure certain promissory notes of the defendant, Charles Wassman. These same properties were also mortgaged to other defendants to secure loans made to Wassman not material to the issues now before us. These mortgages did not include the Guernsey street property, which consists of a double house and lot located on Guernsey street in the city of Bellaire, and is designated as the homestead property, a portion of

which Charles and Mary Jane Wassman have occupied for many years as their homestead and now occupy it as such. Judgments were recovered by certain of the defendants against Wassman and among these judgment creditors is found the Farmers & Merchants National Bank. This judgment was rendered on July 25, 1931, and was against both Charles and Mary Jane Wassman. However, the judgment as against Mary Jane Wassman was set aside and held for naught by the court. Subsequent to the date of the recovery of the judgment above, Charles Wassman on the first day of September, 1931, conveyed this homestead property to his wife, Mary Jane Wassman, and Dorothy Feller, his daughter. However, Wassman and his wife continued to reside thereon as their home and still reside in this property. This conveyance is in no way being attacked. In this proceeding the Farmers & Merchants National Bank set up this judgment by way of cross-petition and, as hereinbefore indicated, the court ordered that there be paid to Mary Jane Wassman $500 out of the proceeds of the sale of the homestead property next after the payment of taxes due the defendant, Findley, county treasurer.

Statutes exempting property from execution are not enacted for the purpose of exonerating debtors from the payment of their just debts but to protect the family, and the courts have consistently held that such should be given liberal construction. The court found that under the facts in the case at bar neither Wassman nor his wife were entitled to homestead exemption but that the wife was entitled to $500 under and by virtue of the provisions of Section 11737, General Code. We think that Section 11737, General Code, is applicable to the issue between these parties. This section provides that "when a homestead [and it is conceded that the Guernsey street property is and has been the homestead of Wassman and his wife for many years] is charged with liens, some of which, as against

the head of the family or the wife, preclude the allowance of a homestead to either of them, but others of such liens do not, and a sale of such homestead is had, then, after the payment, out of the proceeds of sale, of the liens so precluding such allowance, the balance, not exceeding five hundred dollars, shall be awarded to the head of the family, or the wife, as the case may be, in lieu of such homestead, upon his or her application, in person, by agent, or attorney.''

The record discloses that the wife, Mary Jane Wassman, owes delinquent taxes on this homestead property aggregating some $1,200 for the years 1931, 1932, 1933, 1934, 1935, 1936, 1937 and 1938. The same situation prevails as to the other two properties. The wife, Mary Jane Wassman, and daughter own the homestead property and have owned the same since 1931. These delinquent taxes are a lien on the property owned by the wife and daughter. Such constitute a lien which precludes the allowance of a homestead to either as provided in Section 11737, General Code. To this effect see Sections 11729, 5713 and 5698, General Code, and *Gibson* v. *Mundell,* 29 Ohio St., 523.

The fact that the county treasurer was made a party and his claim set up we think brings this issue squarely within the provisions of Section 11737, General Code; for this reason the court was not in error when it found and determined that neither Wassman nor his wife was entitled to a homestead under all the facts and circumstances in the case and was not in error when it found that the wife was entitled to $500 out of the proceeds of the sale of the homestead property after payment of taxes. Section 11737, General Code, is a specific statute intended to reach just such a situation as here presented. This section would be entirely meaningless if the homestead could be set up in defiance of this statute. Coming to these conclusions, the lower court on this issue is affirmed, and by reason of the above conclusion the lower court is affirmed as to

the error urged by Wassman and his wife that they were entitled to an order setting off to them the homestead property under the provisions of Section 11735, General Code, in place of $500 in lieu thereof.

As to the claim urged by plaintiffs that the court was in error when it gave priority to the lien of the judgment of defendants, Farmers & Merchants National Bank, L. L. DuBois, G. W. Minch and George H. McDonald, trustees for creditors of the bank, over the lien of plaintiffs. The court found that the judgment of these trustees was prior in time and right to the mortgage and judgment of the plaintiffs. Was the court in error in so holding? The various claims against Charles Wassman on this issue, as the record now stands, are as follows:

A lien by virtue of a mortgage executed and delivered by Wassman and his wife to plaintiffs in the amount of $41,930.90 and interest. This mortgage covers the Wall Plaster and Belmont street property only and not the homestead property. This mortgage was executed on August 25 and filed with the county recorder on August 26, 1931. A judgment was taken on the notes secured by this mortgage May 22, 1936, and a certificate of judgment filed in the clerk of court's office on May 22, 1936, under the new judgment lien law, which became effective August 30, 1935.

The trustees of the Farmers & Merchants National Bank are the owners and holders of a judgment against Charles Wassman dated July 25, 1931. This judgment antedated the mortgage in question, the mortgage having been filed August 26, 1931. On this judgment execution was issued on February 26, 1932, and on March 1, 1932, a levy made on the Guernsey street property and Wall Plaster property, being within one year from the rendition of judgment. On March 8, 1933, an execution was issued and a levy made on the Belmont street property, more than one year after rendition of judgment, and a certificate of judgment was by the

trustees of the Farmers & Merchants National Bank filed in the office of the clerk of courts on July 8, 1937. On January 13, 1938, an alias execution was issued and a levy made on all the above mentioned real estate by the trustees of the Farmers & Merchants National Bank.

The Union Savings Bank, defendant, holds a mortgage on the Wall Plaster and Belmont street properties, filed August 26, 1931, and is also the owner of a judgment rendered on August 24, 1936, based on the note secured by the mortgage. A certificate of judgment was filed August 29, 1936.

Now as to the claim made by plaintiffs that their mortgage and judgment lien on the Belmont street property is prior in right to the judgment and levy made thereunder by the Farmers & Merchants National Bank and trustees. This claim is urged by reason of the provisions of Section 11708, General Code. This section provides that:

"No judgment on which execution is not issued and levied before the expiration of one year next after its rendition, shall operate as a lien on the estate of a debtor to the prejudice of any other bona fide judgment creditor."

Summarizing the facts briefly they are as follows: The Farmers & Merchants National Bank and trustees recovered a judgment against Wassman on the 25th day of July, 1931. An execution was issued thereon and levy made on the Belmont street property on March 8, 1933, being more than one year after rendition thereof. Plaintiffs have a mortgage on the Belmont street property executed by the Wassmans on August 25, 1931, filed for record on August 26, 1931. In this proceeding plaintiffs are seeking a foreclosure of this mortgage, and the notes secured by this mortgage being cognovit notes, a judgment was rendered on these notes on May 22, 1936, the very day upon which petition was filed in this proceeding and a cer-

tificate of judgment was filed in the office of the clerk of courts of Belmont county on the same day, May 22, 1936.

Under the facts as above recited, is the lien of plaintiffs on the Belmont street property superior and prior to that of the judgment and levy made thereunder by the Farmers & Merchants National Bank and trustees? We think this question has been settled for many years in this state. In the case of *Brazee* v. *President, Directors and Company of the Lancaster (Ohio) Bank,* 14 Ohio, 318, the court laid down the following rule:

"As between an elder judgment not sustained by levy within the year, an intervening mortgage and a junior judgment sustained by levy, the elder judgment must be first satisfied."

The court in the course of its opinion reasons as follows:

"Now it will be observed, as to these judgment liens, they are equal in extent. They attach to the entire land, or to the entire interest of the judgment debtor in the land. They are all of equal validity, and the only question in regard to them is as to priority. In every other respect they are equal, and there is no injustice, no impropriety in giving the preference to that creditor who is the most diligent in the pursuit of his remedy. But it is not so where there is an intervening mortgage. The liens of prior and subsequent judgments are not equal. The elder judgment is a lien upon the entire land, and the entire value of the land may, if necessary, be appropriated for its satisfaction. But the subsequent judgment creditor has not a lien to the same extent. His lien extends only to that interest in the land which remains after the satisfaction of the mortgage, and there can certainly be no propriety in saying that a lien which attaches to the entire land, shall be postponed to one which attaches only to a part of the land; or, more properly speaking,

to the interest which remains in the judgment debtor, after having executed a mortgage upon the land."

In the case of *Holliday* v. *Franklin Bank of Columbus*, 16 Ohio, 533, the first paragraph of the syllabus is as follows:

"Where there is a judgment not levied within the year, a junior judgment levied within the year, and thus acquiring a preference as against the senior judgment, and an intervening mortgage executed and recorded prior to the rendition of the second judgment, the senior judgment shall be first paid, next the mortgage, and the junior judgment shall be postponed to both."

In the case of *Fitch* v. *Mendenhall*, 17 Ohio, 578, the syllabus is as follows:

"Where there is the lien of a judgment, not sustained by levy within the year after rendition of the judgment, but older than the lien of a mortgage, the mortgagee cannot protect himself against the prior judgment lien, by the purchase of a junior judgment levied within the year."

Were it not for the intervening mortgage in this case a different situation would be presented for consideration and determination under the provisions of Section 11708, General Code. The lower court in this regard was not in error in fixing the priority as it did. We might further suggest that the execution and levy made by the Farmers & Merchants National Bank and trustees was long prior to the judgment recovered by plaintiffs and certificate filed. In the case of *Shuee* v. *Ferguson*, 3 Ohio, 136, the court held that a levy on the older judgment, though after the year, if made before the date of the junior judgment will have the preference. We might also further observe that all questions of priority became fixed at the instant this action was filed and when this action was instituted the status of all lienors existing at the time of the commencing of such proceedings was unalterably

fixed and no advantage or preference could be gained thereafter by any creditor. To this effect see *Scott* v. *Dunn*, 26 Ohio St., 63; *Lawrence* v. *Belger*, 31 Ohio St., 175; *Cincinnati* v. *Hafer*, 49 Ohio St., 60, 30 N. E., 197; and other cases might be cited to the same effect.

Now as to the claim of plaintiffs that their lien is prior to that of the judgment and levy thereunder of the Farmers & Merchants National Bank and trustees on both the Wall Plaster property and the Belmont street property. This claim is urged by plaintiffs, due to the fact that the Legislature amended and supplemented Section 11656, General Code, the amended and supplemented sections becoming effective August 30, 1935. The section as it stood prior to amendment (112 Ohio Laws, 199) provides in part:

"Such lands and tenements within the county where the judgment is entered shall be bound for its satisfaction from the day on which such judgment is rendered."

Section 11656, General Code, as amended provides:

"Any judgment or decree rendered by any court of general jurisdiction (including district courts of the United States) within this state shall be a lien upon lands and tenements of each judgment debtor within any county of this state from the time when there shall have been filed in the office of the clerk of the Court of Common Pleas of such county a certificate of such judgment, setting forth the court in which the same was rendered, the title and number of the action, the names of the judgment creditor or creditors and judgment debtor or debtors, the amount of the judgment and costs, the rate of interest (if the judgment provides for interest), and the date from which such interest accrues, the date of rendition of the judgment and the volume and page of the journal entry thereof * * *."

Section 11663, General Code, prior to its amendment, effective August 30, 1935, provides as follows:

"If execution on a judgment rendered in a court of record in this state, or a transcript of which has been filed as hereinbefore provided, be not sued out within five years from the date of the judgment, or if five years intervene between the date of the last execution issued thereon and the time of suing out another execution, such judgment shall be dormant, and cease to operate as a lien on the estate of the judgment debtor."

This section was amended (116 Ohio Laws, 275) to read as follows:

"If neither execution on a judgment rendered in a court of record or certified to the clerk of the Court of Common Pleas in the county in which such judgment was rendered be issued, nor a certificate of judgment for obtaining a lien upon lands and tenements be issued and filed, as provided in Sections 11656 and 11656-2 of the General Code, within five years from the date of such judgment, or within five years from the date of the issuance of the last execution thereon or the issuance and filing of the last such certificate thereof, whichever be later, then such judgment shall be dormant and shall not operate as a lien upon the estate of the judgment debtor. * * *"

It is urged that by reason of the fact that Section 11656, General Code, was amended, whatever lien the Farmers & Merchants National Bank and trustees had upon these properties by way of lien or levy was destroyed by the repeal of this original Section 11656 and that the only way open to the bank and trustees to re-establish a lien was by filing a certificate of judgment as provided in the amended section and the record discloses that plaintiffs did file a certificate of judgment as provided therein, prior to the filing of a certificate of judgment by the Farmers & Merchants National Bank and trustees, and no further execution or levy was made by the Farmers & Merchants National Bank and trustees under the amended pro-

visions of Section 11663, General Code, prior to plaintiffs filing its certificate of lien.

Under these circumstances do plaintiffs have a lien prior to that of the Farmers & Merchants National Bank and trustees? The general rule is to the effect that statutes operate prospectively, not retrospectively. See 37 Ohio Jurisprudence, 819, Section 499 *et seq.*

In the case of *Robson* v. *Fauver,* 26 Ohio Law Abs., 255, decided by the Court of Appeals of the Ninth Appellate District, that court held that the Legislature by the revision of the statutes relating to judgments did not intend to disturb preexisting rights or priorities. This court in the case of *Luce* v. *Purity Baking Co.,* an Ashtabula county case, concluded that the Legislature did not so intend, and it is the conclusion of this court in this case that the Legislature did not by the amendment of Section 11656, General Code, intend to disturb in any way preexisting rights, liens and priorities, that the statute in question operates prospectively and not retrospectively.

For the various reasons set out in this opinion, it is the conclusion of this court that the lower court was not in error in fixing the priorities as it did and the judgment of that court is, therefore, affirmed.

*Judgment affirmed.*

NICHOLS, P. J., and McCURDY, J., concur.

McCURDY, J., of the Fourth Appellate District, sitting by designation in the Seventh Appellate District.